**Joseph HOHMAN, Appellant,**

**v.**

**Jennifer DERY, Appellee.**

**No. 2010–CA–001827–ME.**

Court of Appeals of Kentucky.

Jan. 20, 2012.

Case Ordered Published by
Court of Appeals March 16, 2012.

Discretionary Review Denied by
Supreme Court Aug. 15, 2012.

Allen McKee Dodd, Louisville, KY, for appellant.

Michael J. Jurek, Louisville, KY, for appellee.

Before CLAYTON, DIXON and LAMBERT, Judges.

*OPINION*

DIXON, Judge:

Joseph Hohman appeals from a Domestic Violence Order entered against him by the Jefferson Family Court pursuant to a petition filed by Jennifer Dery. We affirm.

On August 2, 2010, Jennifer filed a domestic violence petition against Joseph, her former boyfriend and the father of her child. At the time the petition was filed, the parties were involved in a paternity action, where they were attempting to resolve issues relating to custody, visitation, and child support. In her petition, Jennifer alleged Joseph followed her current boyfriend, Andrew Young, as he departed Jennifer's home, which prompted Jennifer to call police. Jennifer stated Joseph frequently drove up and down Andrew's street, sometimes while their child was in the vehicle, and that Joseph contacted her several times per day by phone and text message using derogatory language toward her and threatening suicide. Jennifer further asserted that Joseph became aggressive toward her when discussing arrangements for their child, causing her to fear for her safety. Based on the petition, the court issued an EPO and set a hearing for August 16, 2010.

At the hearing, the court read the petition into the record, and Jennifer adopted the statements made therein. Jennifer additionally testified she felt threatened by Joseph when they met to discuss the child because he clenched his fists, gritted his teeth, and yelled at her. Jennifer described Joseph as "scary," and she explained that, even during their relationship, Joseph lacked self-control and the ability to control his emotions. Jennifer testified she feared Joseph's behavior was going to escalate "to the next level." Jennifer also advised the court she had witnessed Joseph, with their child in a stroller, crouched in the easement adjacent to Andrew's backyard. The court also viewed numerous text messages sent by Joseph to Jennifer, many of which degrad-

ed Jennifer and used derogatory and explicit language.

Andrew also testified on Jennifer's behalf. Andrew stated he typically saw Joseph drive up and down the street in front of his home three to five times per day. Andrew further testified that he had observed Joseph sitting in an alley beside his house. Andrew asserted he was concerned for Jennifer's safety, and he described Joseph's behavior as "disturbing."

Joseph testified and generally denied all of the allegations asserted by Jennifer. Joseph denied that he threatened suicide, and he contended that he drove through Andrew's neighborhood as a convenience because it was near his own subdivision. As to his presence in the easement, Joseph stated he had taken the child to a nearby park and their soccer ball had rolled into Andrew's yard.

At the conclusion of the hearing, the court issued a one-year DVO against Joseph, restraining him from contacting Jennifer. In January 2011, the trial court denied Joseph's motion to vacate the DVO; however, on February 28, 2011, the court dismissed the DVO pursuant to an agreed order in the paternity case.

■ As an initial matter, we conclude Joseph's appeal is not moot despite the fact the DVO was dismissed while this appeal was pending. In *Caudill v. Caudill*, 318 S.W.3d 112, 114 (Ky.App.2010), this Court held that the expiration of a DVO did not moot the appeal because of the "continuing consequences" which could result from having a DVO on the respondent's criminal record. We agree with Joseph that his appeal should be resolved on the merits to determine whether the DVO was entered erroneously.

On appeal, Joseph challenges the sufficiency of the evidence relied on by the court to support its finding of domestic violence. Joseph also asserts he was denied procedural due process when the court denied his request for a continuance so he could depose Jennifer prior to the DVO hearing. After reviewing the record and applicable law, we affirm.

■ A court may grant a DVO, following a full hearing, "if it finds from a preponderance of the evidence that an act or acts of domestic violence and abuse have occurred and may again occur[.]" KRS 403.750(1). " 'Domestic violence and abuse' means physical injury, serious physical injury, sexual abuse, assault, or the infliction of fear of imminent physical injury, serious physical injury, sexual abuse, or assault between ... members of an unmarried couple[.]" KRS 403.720(1). To satisfy the preponderance standard, the evidence believed by the fact-finder must show that the victim "was more likely than not to have been a victim of domestic violence." *Commonwealth v. Anderson*, 934 S.W.2d 276, 278 (Ky.1996). "On appeal, we are mindful of the trial court's opportunity to assess the credibility of the witnesses, and we will only disturb the lower court's finding of domestic violence if it was clearly erroneous." *Buddenberg v. Buddenberg*, 304 S.W.3d 717, 720 (Ky.App. 2010).

We frame our review by noting there is no evidence Jennifer suffered physical injury or assault perpetrated by Joseph. Our inquiry turns on whether substantial evidence supports a finding that Joseph inflicted upon Jennifer a fear of imminent physical injury or assault.

Joseph relies on his own testimony, where he either denied or minimized the allegations, to support his argument that there was no evidence he caused Jennifer to fear imminent physical injury. Despite Joseph's assertions to the contrary, Jennifer specifically testified she felt threatened when he clenched his fists and yelled at

her through gritted teeth. Jennifer explained that she believed Joseph was unable to control his emotions and that she feared his aggressive confrontations would escalate "to the next level." Jennifer further expressed her concern with Joseph's frequent "drive-bys," coupled with text messages that indicated Joseph knew Andrew's work schedule and messages that expressed Joseph's anger at Jennifer for ruining his life.

■ We reiterate that the family court is in the best position to judge the credibility of the witnesses and weigh the evidence presented. *Id.* Here, Joseph and Jennifer gave conflicting accounts of Joseph's conduct. As the fact-finder, the court relied on the testimony of Jennifer and Andrew and found them to be more credible than Joseph. Based on the record, we conclude the evidence presented was sufficient for the court to reasonably infer that Joseph's conduct caused Jennifer to fear imminent physical injury; accordingly, the court's finding of domestic violence was not clearly erroneous. As the finding of domestic violence was supported by substantial evidence, the court likewise did not err by denying Joseph's post-judgment motion to vacate the DVO.

■ Next, Joseph contends he was denied procedural due process because he could not fully present a defense. Joseph asserts that, pursuant to CR 30.01,[1] he was entitled to a reasonable opportunity to conduct a discovery deposition prior to the DVO hearing in order to fully prepare a defense to Jennifer's allegations.

Although the notice to take deposition and subpoena are not in the record on appeal, it appears Joseph sought to depose Jennifer regarding both the paternity case and the domestic violence case. Jennifer failed to appear at a deposition scheduled prior to the DVO hearing; consequently, Joseph requested a continuance of the DVO hearing until Jennifer could be deposed. The court heard the parties' arguments and denied Joseph's request for a continuance, stating the purpose of the domestic violence statutes is to get a DVO in place as soon as possible if domestic violence is found.

As to Joseph's reliance on CR 30.01, we are mindful the enforcement of the civil rules during litigation is a matter within the sound discretion of the trial court. *Naive v. Jones,* 353 S.W.2d 365, 367 (Ky. 1961). In *Lynch v. Lynch,* 737 S.W.2d 184, 186 (Ky.App.1987), this Court stated, "Due process requires, at the minimum, that each party be given a meaningful opportunity to be heard." Accordingly, prior to issuing a DVO, "the court must provide a full evidentiary hearing conducted in compliance with statutory and court rules." *Rankin v. Criswell,* 277 S.W.3d 621, 626 (Ky.App.2008). The family court has discretion when deciding whether to grant or deny a continuance; consequently, we review the court's decision under the abuse of discretion standard. *Guffey v. Guffey,* 323 S.W.3d 369, 371 (Ky.App. 2010). Several factors are relevant in determining whether a continuance is warranted, including the responsibilities of each party in creating the situation, bad faith conduct, and alternative solutions. *Id.* at 372. Furthermore, the movant must show he will suffer an identifiable prejudice if the request is denied. *Id.*

In the case at bar, the court noted the importance of having a speedy hearing to resolve allegations of domestic violence and protect a victim from further abuse. Further, the court noted that, although it

---

1. CR 30.01 provides in relevant part, "After commencement of the action, any party may take the testimony of any person, including a party, by deposition upon oral examination."

was denying the continuance, Joseph was still free to depose Jennifer in their paternity case. Finally, although Joseph claims he was prejudiced by the denial of a continuance, he has not identified how postponing the DVO hearing to conduct discovery would have changed the outcome of the proceedings.

We are cognizant that the purpose of Kentucky's domestic violence statutes is "[t]o allow persons who are victims of domestic violence and abuse to obtain effective, short-term protection against further violence and abuse in order that their lives will be as secure and as uninterrupted as possible[.]" KRS 403.715(1). Accordingly, we agree with the trial court that the timely holding the domestic violence hearing is essential to the purpose of the statutes. The record reveals the court conducted the hearing in a full and fair manner, and we are not persuaded denying the motion to continue was an abuse of discretion or that it prejudiced Joseph's defense. Despite his argument to the contrary, we are satisfied Joseph was afforded procedural due process.

For the reasons stated herein, the judgment of the Jefferson Family Court is affirmed.

ALL CONCUR.