RENDERED: FEBRUARY 25, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0876-ME

JOHN-ROBERT COLLINS                                                    APPELLANT

v.
APPEAL FROM UNION CIRCUIT COURT
HONORABLE BRANDI D. ROGERS, JUDGE
ACTION NO. 21-D-00036-001

FELICIA ANN COLLINS                                                      APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: LAMBERT, MAZE, AND L. THOMPSON, JUDGES.

THOMPSON, L., JUDGE: John-Robert Collins ("Appellant") appeals from a

domestic violence order ("DVO") entered by the Union Circuit Court on July 7,

2021. Appellant makes the following arguments: that his alleged bad acts do not

rise to the level of domestic violence as defined by Kentucky Revised Statutes

("KRS") 403.720(1); that there was no evidence that domestic violence and abuse

may occur again; and that the circuit court's findings are not supported by

substantial evidence.  He also argues that the circuit court violated his constitutional rights by failing to explain to him the seriousness of a DVO, and by not giving him the opportunity to seek counsel.  For the reasons addressed below, we find no error and affirm the DVO on appeal.

## FACTS AND PROCEDURAL HISTORY

Appellant and Felicia Ann Collins ("Appellee") were married in October of 2010 and remained together until June of 2021.  They had one child in common (9 years old at the time of the hearing), and they were raising Appellee's child by a previous relationship (12 years old).  On the date of the alleged incident, the Collins family resided in Evansville, Indiana.  Appellee left with the children that day and relocated to Sturgis, Kentucky.  Appellant moved to Morganfield, Kentucky, where he has family.

Appellee filed a petition for an emergency protective order ("EPO") on June 15, 2021, in which she made the following allegations:[1]

> My children and I left and fled to my mother[']s home because my husband John-Robert Collins has been mentally abusive to my children and I.  John-Robert was keeping me from my medication, my children told me they felt uncomfortable around him because he is always very negative and goes from nice to screaming mean.  He has told my daughter to kill herself.  He wants to see our youngest who we have in common and she is scared of him, I'm very fearful for her life if she is alone with him. His mental state is now "I'm going to kill myself" and

---

[1]  The wording from the petition is unedited.

guilting our children. [Name omitted] our youngest is
having panic attacks when he calls and text her. She's so
afraid he will kidnap her. I waited this long from
Wednesday June the 9th because I didn't know that was
an option.

Appellee, in asking for protective relief, also requested temporary custody of the

children and alleged that she is "afraid he will take my kids without me looking."

In the petition's space provided for additional comments, Appellee added:

Our oldest daughter doesn't want to be alone with him
because she is scared of his intentions. He calls us names
and cusses screaming every day. He has lunged at me a
couple times scaring them & me. He has punched holes
in the wall in previous homes. He is also on meth so that
terrifies me with his mental state and him being around
our children. Like I said he snaps and his moods change
quickly for the worse. I don't know the people he has in
our home, but I know misery loves company and I am
just very fearful for the saf[e]ty of our children, and I just
want to keep their physical & mental beings healthy.

The Union Circuit Court entered the EPO on the date the petition was filed, and

scheduled a hearing for June 30, 2021. On the date of the hearing, Appellant

appeared, but was not represented by counsel. He stated that he could not afford

representation, but understood the court's explanation that it was not able to

appoint one for him. The parties were the only witnesses.

Appellee stated her version of the events of June 9, 2021. She

testified that the parties' family frequently argued over money; that there was

never enough to cover all their expenses; and that Appellant would not allow

Appellee to refill her prescriptions for anxiety and depression because the money would be needed for rent and food. Appellant worked outside the home, while Appellee "stayed at home with the girls." Appellee stated that the arguing had escalated on that day, and her husband had lunged at her while she sat on the couch. He did not strike her, but instead ordered her to leave the house. The children were present when the incident happened. Upon further questioning from her attorney, Appellee recalled prior incidents dating back several years. She stated that Appellant had punched holes in the walls of former residences; she said he had described their situation as "killing him," which he said would make her complicit in his murder; he had told her of a violent dream in graphic detail, which she had interpreted as a threat to her; one time he had knocked a cell phone out of her hand; he had once thrown a bowl of noodles toward her; Appellant used methamphetamine in the home ("in the bedroom and bathroom"); and he frequently called Appellee and the daughters unthinkable names. When the court asked Appellee whether she was afraid of Appellant, Appellee stated, "yes."

Appellant then testified. He began by repeating that he could not afford an attorney because his money had been spent moving to Morganfield, Kentucky to be closer to his support system. Appellant insisted that he did not keep Appellee from filling her prescriptions. He testified that the couple had a joint checking account, the debit card was in Appellee's name, and she had a car.

Appellant acknowledged expressing his opinion that the family needed the money ($400.00 for each prescription refill) for feeding the children and paying the rent, but denied keeping the medication from her. He testified that he had encouraged Appellee to speak to her physician about prescribing a less expensive remedy. Appellant also denied committing any violence toward the family members and instead characterized his speech as impassioned. He would get particularly upset with Appellee when, after working ten to twelve hours, he would return home to find her still in bed. He admitted knocking the telephone out of her hand on one occasion, but denied that it was anywhere near her face at the time. He also denied throwing a bowl of food toward her. He said that both parties participated in illegal drug use. Appellant testified that he has sought help from a new doctor in Henderson, Kentucky, and is doing all he can to get his "moods under control."

The court found that Appellant had placed Appellee in fear of imminent harm. A temporary supervised visitation schedule was entered, with the parties agreeing on Elaine Powell to conduct the supervision. The court advised Appellant that it would be providing him with a list of acceptable providers for him to get a mental health and addiction assessment. The court emphasized that assessment should be a top priority for Appellant. The court informed the parties that a DVO would be entered for one year's duration, but that time frame could be amended "sooner or later depending on the circumstances." Appellant was warned

that a violation of the protective order constituted a crime, and that the parties should approach the court for amendment rather than attempt to come to an agreement without court approval.

The court entered written findings on July 7, 2021. Appellant hired counsel who entered an appearance and filed a timely notice of appeal. This Court ordered the matter expedited.

## ARGUMENTS AND ANALYSIS

Appellant argues that Appellee failed to establish by a preponderance of the evidence that an act of domestic violence had occurred. Specifically, he contends that the alleged acts that occurred on or prior to June 9, 2021, do not rise to the level of domestic violence and abuse set out in KRS 403.720(1). Appellant also asserts that the circuit court erred in entering the DVO as Appellee failed to establish by a preponderance of the evidence under KRS 403.740(1) that domestic violence and abuse may occur again. In addition, Appellant argues that the court's findings are not supported by substantial evidence. Finally, Appellant claims that the court violated his rights by not adequately explaining to him the severity of a DVO and not allowing him the opportunity to seek counsel before moving forward with the evidentiary hearing. In sum, he requests an opinion reversing and dismissing the Union Circuit Court's DVO.

A court may grant a DVO, following a full hearing, "if it finds from a preponderance of the evidence

-6-

that an act or acts of domestic violence and abuse have occurred and may again occur[.]" KRS 403.740(1). "'Domestic violence and abuse' means physical injury, serious physical injury, sexual abuse, assault, or the infliction of fear of imminent physical injury, serious physical injury, sexual abuse, or assault between [family members or] members of an unmarried couple[.]" KRS 403.720(1). To satisfy the preponderance standard, the evidence believed by the fact-finder must show that the victim "was more likely than not to have been a victim of domestic violence." *Commonwealth v. Anderson*, 934 S.W.2d 276, 278 (Ky. 1996). "On appeal, we are mindful of the trial court's opportunity to assess the credibility of the witnesses, and we will only disturb the lower court's finding of domestic violence if it was clearly erroneous." *Buddenberg v. Buddenberg*, 304 S.W.3d 717, 720 (Ky. App. 2010).

*Hohman v. Dery*, 371 S.W.3d 780, 782 (Ky. App. 2012).

In support of the DVO, Appellee alleged that she experienced fear of imminent physical injury per KRS 403.720(1), and it was upon this basis that the circuit court entered the DVO.[2] The question for our consideration, then, is whether the finding of domestic based on fear of imminent physical injury was clearly erroneous. *Hohman*, *supra*.

Appellee testified that Appellant had a history of methamphetamine use; that he knocked a cell phone out of her hand and threw a bowl of food toward her; that he punched holes in the wall; that he could get "screaming mean"; that he

---

[2] The court found that "[t]here has been a pattern of behavior by R[espondant] that has placed P[etitioner] in fear of imminent harm."

-7-

has a suicidal mental state; and that he lunged at her in a threatening manner and got within one foot of her face. Appellee also stated that Appellant threatened suicide many times; cursed at Appellee's child and told the child she should kill herself; and told Appellee that if she left him he would wake her by engaging in a sex act while wrapped in the skin of a freshly killed deer. Appellee interpreted this as a threat to her safety. Appellant denied throwing food at Appellee. He acknowledged his drug usage, mood swings, and threats to harm himself. He said the story about the deer skin was not to be taken seriously, and in retrospect he acknowledged that it was not funny.

In considering this testimony, the circuit court found Appellee's testimony credible and Appellant's testimony not credible. As the trier of fact, the circuit court is best situated to make this determination. *Hohman*, 371 S.W.3d at 783. Appellant properly notes that he never struck Appellee, and reiterates that the events she recounted spanned a period of time going back to the couple living at a prior residence. This tends to support his claim that Appellee does not have a fear of *imminent* physical injury. Nevertheless, Appellee gave testimony of Appellant's chronic, threatening behavior, mood swings, and drug use contemporaneous with Appellee's filing of the petition. At the time of the hearing, she alleged that she was afraid of Appellant and fearful for her daughter's life. She also stated that the parties' youngest daughter has panic attacks when Appellant calls or texts, and that

-8-

her older daughter from a prior relationship doesn't want to be alone with Appellant and is afraid of him. She said Appellant cusses and screams at them "every day."

"[D]omestic violence statutes should be construed liberally in favor of protecting victims from domestic violence and preventing future acts of domestic violence." *Barnett v. Wiley*, 103 S.W.3d 17, 19 (Ky. 2003) (citation omitted). Given the relatively low preponderance of the evidence standard, our duty to liberally construe domestic violence statutes in favor of protecting victims, and with recognition of the lower court's discretion in making these determinations, we do not conclude that the Union Circuit Court's finding of domestic violence was clearly erroneous. Based on the evidence, Appellee was in fear of imminent physical injury. Additionally, Appellant's history of threatening and angry behavior toward Appellee and the children supports a conclusion that domestic abuse may happen again.

Lastly, Appellant argues that the circuit court violated his constitutional rights by not adequately explaining to him the severe consequences of a DVO and by not allowing him the opportunity to seek counsel before moving forward with the evidentiary hearing. To our knowledge, Appellant did not raise below his claim that the circuit court improperly failed to explain the severe consequences of a DVO. "A basic general principle of the Rules of Civil

Procedure is that a party is not entitled to raise an error on appeal if he has not called the error to the attention of the trial court and given that court an opportunity to correct it." *Little v. Whitehouse*, 384 S.W.2d 503, 504 (Ky. 1964) (citation omitted). As such, we will review this issue only for manifest injustice. *Ford v. Commonwealth*, 628 S.W.3d 147, 155 (Ky. 2021).

"[A] party has a meaningful opportunity to be heard where the trial court allows each party to present evidence and give sworn testimony before making a decision." *Holt v. Holt*, 458 S.W.3d 806, 813 (Ky. App. 2015) (citation omitted). The Union Circuit Court conducted a full hearing and heard testimony from both parties. Appellant cites no case law or statutory law for the proposition that the trial judge has duty to inform the parties of the seriousness of a DVO proceeding in advance of the hearing so that the parties may properly prepare. Further, the duty rested with Appellant to bring counsel to the hearing if that was his choice. Though he stated that he was unable to afford counsel, he subsequently was able to engage appellate counsel. We find no violation of Appellant's constitutional rights, and no manifest injustice.

## CONCLUSION

The DVO entered by the Union Circuit Court was not clearly erroneous. Appellant's constitutional rights were not violated as he had a

meaningful opportunity to respond to Appellee's petition.  For these reasons, we find no error and affirm the DVO of the Union Circuit Court.

ALL CONCUR.


BRIEFS FOR APPELLANT:

M. Alexander Russell
Henderson, Kentucky

BRIEF FOR APPELLEE:

J.T. Skinner
Morganfield, Kentucky