RENDERED:  JUNE 23, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-1120-ME

MANOJ JALADI                                                                 APPELLANT

v.
APPEAL FROM JEFFERSON CIRCUIT COURT
FAMILY COURT DIVISION
HONORABLE LAUREN ADAMS OGDEN, JUDGE
ACTION NO. 22-D-500466-001

DEEKSHITHA TURAKA                                                         APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  EASTON, GOODWINE, AND TAYLOR, JUDGES.

TAYLOR, JUDGE:  Manoj Jaladi brings this appeal from an August 16, 2022,

Order of Protection (Domestic Violence Order or DVO) entered against him by the

Jefferson Family Court upon petition by his wife, Deekshitha Turaka.[1]  For the

reasons stated, we affirm.

---

[1] After entry of the Domestic Violence Order on August 16, 2022, Manoj Jaladi filed a Motion to Amend Prior Order of Protection.  By order entered August 30, 2022, the family court denied the motion.

BACKGROUND

The parties wed in an arranged marriage in India on August 25, 2021, and thereafter moved to Louisville, Kentucky. On January 16, 2022, Turaka alleged that Jaladi became frustrated while filling out a questionnaire for marriage counseling and threw a laptop at her, bruising her arm. The parties separated on January 26, 2022, and Turaka left the marital residence.[2] On February 19, 2022, Turaka filed a DVO petition for an order of protection. In her petition, she alleged multiple instances of domestic violence, emotional abuse, sexual abuse, and detailed Jaladi's aggressive and controlling behaviors. She also alleged Jaladi threatened to take her back to India where she would be subject to dire consequences. Record at 1. The on-call family court judge issued a summons and set a hearing date for March 1, 2022; said summons was served on Jaladi on February 21, 2022.

At the March 1, 2022, hearing, Turaka appeared without counsel and Jaladi appeared with counsel.[3] The family court read the petition aloud and Turaka adopted the petition allegations through her testimony. Turaka admitted that Jaladi had not actually "thrown" the laptop, but rather forcefully slid it along the carpet, nor did she have any evidence of her injury. Turaka testified that she had filed a

---

[2] Purportedly, in late January 2022, Jaladi moved to North Carolina.

[3] Jaladi appeared at the hearing by Zoom and his counsel appeared in person.

divorce action in India but it could take six months to two years to be finalized. Video, March 1, 2022, Hearing – 10:41:30. Jaladi admitted to having punched a hole in a wall on one occasion in the past, and often threw things when angry, but he denied the other allegations of abuse, including sexual abuse. Video, March 1, 2022, Hearing – 10:59:20.

Turaka requested the entry of a protective order to extend until the divorce proceedings in India could be completed. At the conclusion of the evidentiary hearing, the family court entered an Emergency Protective Order (EPO) to last for six (6) months from the date Turaka filed the petition. The order was a standard Administrative Office of the Courts "AOC" Form 275.2 order of protection. The court also made findings on an accompanying docket sheet and on a continuation sheet. The family court made specific findings that Turaka was credible in her detailing of Jaladi "throwing" a laptop and grabbing her as well as punching and damaging walls; that Jaladi had forced sex upon Turaka; that Jaladi was controlling, aggressive, and isolated Turaka from friends and family; that Jaladi threatened to take Turaka back to India against her will; and that he controlled Turaka financially, and refused to buy furniture or a car. Record at 19-22. The court further scheduled another hearing prior to expiration of the EPO for August 16, 2022.

While Turaka and her attorney were present, neither Jaladi nor his counsel appeared at the hearing on August 16, 2022. The family court noted on the record that based on the previous hearing, there were sufficient findings to support the entry of a DVO and incorporated the same upon entering the DVO on an AOC form. Therein, the judge checked the box under the "Additional Findings" section stating that it was established by a preponderance of the evidence that an act of domestic violence and abuse occurred and may again occur. On the accompanying docket sheet, the family court noted Jaladi and his counsel's failure to appear at the hearing and stated: "[Petitioner] is still fearful after numerous threats, damage to property, sexual abuse, etc. [Three year no contact] DVO. DV has occurred [and] likely to occur again. [Court] adopts findings from prior 3-1-22 order." Record at 36.

On August 23, 2022, Jaladi filed a motion to amend the DVO asserting that insufficient findings existed for its issuance. The family court denied the motion by order entered August 30, 2022. This appeal followed.

On appeal, Jaladi raises three arguments: (1) that the family court failed to make sufficient written findings of fact; (2) the family court erred by entering a DVO based on insufficient evidence; and, (3) the family court improperly converted the EPO to a DVO. We shall address each argument *seriatim*.

-4-

A family court may issue a DVO if it "finds by a preponderance of the evidence that domestic violence and abuse has occurred and may again occur[.]" Kentucky Revised Statutes (KRS) 403.740(1).

> The preponderance of the evidence standard is satisfied when sufficient evidence establishes the alleged victim was more likely than not to have been a victim of domestic violence. *Baird v. Baird*, 234 S.W.3d 385, 387 (Ky. App. 2007). The definition of domestic violence and abuse, as expressed in KRS 403.720(1), includes "physical injury, serious physical injury, sexual abuse, assault, or the infliction of fear of imminent physical injury, serious physical injury, sexual abuse, or assault between family members. . . ." The standard of review for factual determinations is whether the family court's finding of domestic violence was clearly erroneous. [Kentucky Rules of Civil Procedure] CR 52.01; *Reichle v. Reichle*, 719 S.W.2d 442, 444 (Ky. 1986). Findings are not clearly erroneous if they are supported by substantial evidence. *Moore v. Asente,* 110 S.W.3d 336, 354 (Ky. 2003). "[I]n reviewing the decision of a trial court the test is not whether we would have decided it differently, but whether the findings of the trial judge were clearly erroneous or that he abused his discretion." *Cherry v. Cherry*, 634 S.W.2d 423, 425 (Ky. 1982) (citation omitted). Abuse of discretion occurs when a court's decision is unreasonable, unfair, arbitrary or capricious. *Kuprion v. Fitzgerald*, 888 S.W.2d 679, 684 (Ky. 1994) (citations omitted).

> While "domestic violence statutes should be construed liberally in favor of protecting victims from domestic violence and preventing future acts of domestic violence[,]" *Barnett v. Wiley*, 103 S.W.3d 17, 19 (Ky. 2003), "the construction cannot be unreasonable." *Id.* (citing *Beckham v. Board of Education of Jefferson*

*County*, 873 S.W.2d 575, 577 (Ky. 1994)).  Furthermore, we give much deference to a decision by the family court, but we cannot countenance actions that are arbitrary, capricious or unreasonable.  *See Kuprion*, 888 S.W.2d at 684.

*Caudill v. Caudill*, 318 S.W.3d 112, 114-15 (Ky. App. 2010) (footnote omitted).

ANALYSIS

The first argument that Jaladi raises on appeal is the sufficiency of written findings for the entry of the DVO.  A family court's duty to make findings of fact is not satisfied until they are reduced to writing.  *Keifer v. Keifer*, 354 S.W.3d 123, 126 (Ky. 2011).  The only two essential specific findings of facts that need to be made and reduced to writing for the entry of a DVO are:  (1) an act of domestic violence or abuse occurred, and (2) an act may occur again.  *Smith v. McCoy*, 635 S.W.3d 811, 817 (Ky. 2021).  This can be accomplished upon the family court completely and accurately filling out an AOC Form 275.3.  *Id.*; *Williford v. Williford*, 583 S.W.3d 424, 430 (Ky. App. 2019).

As noted, the family court completed an AOC Form 275.3.  Therein, the court marked a box under the "Additional Findings" section stating that an act of domestic violence or abuse occurred and may occur again, and made additional findings of fact on the court's docket sheet, including the adoption of the court's findings from the March 1, 2022, hearing.  *See, e.g.*, *Pettingill v. Pettingill*, 480

-6-

S.W.3d 920, 925 (Ky. 2015). Thus, the written findings of the family court for the DVO are sufficient.[4]

Jaladi's second argument looks to the sufficiency of the evidence itself. Following an evidentiary hearing, if a family court finds by "a preponderance of the evidence that domestic violence and abuse has occurred and may again occur," it may issue a DVO. KRS 403.740. The phrase "domestic violence and abuse" is defined as "physical injury . . . the infliction of fear of imminent physical injury . . . or assault between family members . . . ." KRS 403.720(2)(a). This standard is met when the court finds the alleged victim was more likely than not to have been a victim. *Baird v. Baird*, 234 S.W.3d 385, 387 (Ky. App. 2007) (citation omitted).

At the hearing on March 1, 2022, there was conflicting testimony about the incident on January 16, 2022, and whether Jaladi caused a physical injury to Turaka. Turaka claimed that the laptop hit her and bruised her internally causing pain for a week, though she admitted that she had no photos or medical documentation to support this. Jaladi testified that he did not throw the laptop,

---

[4] Jaladi cites to *Bell v. Bell*, 423 S.W.3d 219, 221 (Ky. 2014), to support his assertion that the docket sheets are nothing more than bench notes. We find this argument to be without merit. The Kentucky Supreme Court has again recently confirmed that the use of docket sheets to memorialize findings of fact in domestic violence proceedings satisfied the court's good-faith duty to document its fact-finding. *See Smith v. McCoy*, 635 S.W.3d 811, 816 (Ky. 2021).

only shoved it along the carpet, and that the laptop was not damaged in any way. Video, March 1, 2022, Hearing – 10:51:00.

Whether Turaka sustained a physical injury on January 16, 2022, is immaterial to our analysis as sufficient evidence was admitted at the hearing on March 1 for the family court to have concluded that Turaka feared imminent physical injury by Jaladi. The infliction of fear of imminent physical injury does not require finding that a physical injury actually occurred. *Hohman v. Dery*, 371 S.W.3d 780, 782-83 (Ky. App. 2012). In *Hohman,* the family court found that the infliction of fear of imminent physical injury occurred, despite the nonexistence of a physical injury, based on the petitioner's testimony that she felt threatened by the respondent's actions which included clenching his fists, yelling, and gritting his teeth. *Id.* Here, by Jaladi's own admissions, he "pushed" the laptop toward Turaka, punched a hole in a wall in anger previously, and returned to the marital residence shortly after the parties had separated. There was also evidence presented that Jaladi threw things when he was angry and that he had forced sex upon Turaka against her will. The family court considered the entirety of the evidence presented, found Turaka to be credible in her testimony, and chose to believe her. *See Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003). We are also mindful that the family court is in the best position to judge the credibility of the witnesses. *Hohman*, 371 S.W.3d at 783.

Further, when considering whether domestic violence may again occur, the family court must consider the "totality of the circumstances and weigh the risk of future violence against issuing a protective order." *Pettingill*, 480 S.W.3d at 925. It is clear the family court did so, as it considered past aggressive and controlling behaviors of Jaladi, the heightened chance for conflict during divorce proceedings, and the likelihood of Jaladi returning to Kentucky from his residence in North Carolina.

Jaladi further argues that because the family court did not have sufficient evidence to enter a DVO on March 1, 2022, it necessarily follows that it did not have sufficient evidence on August 16, 2022, when the court did not elicit any new testimony at that hearing. However, Jaladi's argument is based on the misguided presumption that the family court did not have sufficient evidence on March 1, 2022, to grant the DVO. Based on our analysis above, because sufficient and substantial evidence existed on March 1, 2022, for the entry of a DVO, sufficient and substantial evidence existed on August 16, 2022, and the family court appropriately adopted and incorporated the March 1, 2022, findings into its DVO.

Finally, Jaladi asserts that the family court abused its discretion by converting the EPO entered March 1, 2022, into a DVO on August 16, 2022, after the court allegedly expressed, at the March 1, 2022, hearing, an intent to dismiss

the action if Jaladi did not violate the EPO before the next hearing date. However, based on our review of the entire record, it is clear that the August 16, 2022, hearing was intended to be a continuation of the March 1, 2022, hearing. Of particular concern to the family court in March was whether the parties pending divorce could be finalized in India in expedient fashion, which the court noted would take at least six months. At the hearing on August 16, 2022, it was obvious that the divorce would not be finalized for a substantial period of time. Providing Turaka protection during the pendency of the divorce was addressed by the family court at both the March 1 and August 16 hearings. Given this circumstance and the evidence before the family court, we do not believe the family court abused its discretion in granting a DVO at the August 16, hearing.

We also note that Jaladi was properly served with the petition and notice of the March 1, 2022, hearing, at which he and his counsel appeared. Each party was allowed to fully present their case at the hearing, which is not disputed. The family court addressed the scheduling for the next hearing date, setting it for August 16, 2022, which was the closest available date to the expiration of the EPO on August 19, 2022. Video, March 1, 2022, Hearing – 11:07:00. Jaladi and his counsel agreed to the new date, the date was noted twice on the docket sheets, and the docket sheets were served on Jaladi's counsel along with the EPO.

-10-

Attendance is not always mandatory for hearings involving DVOs. *Cottrell v. Cottrell*, 571 S.W.3d 590, 592 (Ky. App. 2019) (holding there is no inherent or statutorily mandated due process right for an evidentiary hearing for the extension of a DVO). While Jaladi was not present at the continued hearing on August 16, 2022, his testimony was not cut short at the first hearing; he agreed to the second hearing date; and has not asserted that his and his counsel's absence was unavoidable. *Cf. Hawkins v. Jones*, 555 S.W.3d 459, 462 (Ky. App. 2018).

During the hearing on the Motion to Amend Prior Order of Protection, Jaladi's counsel admitted that he was not present at the hearing on August 16, 2022, because he mistakenly believed that the continued DVO hearing date would have been on the date of expiration of the EPO, which was August 19, 2022. Video, August 30, 2022, Hearing – 8:38:00. However, counsel's misunderstanding of a date does not generally amount to excusable neglect. *See St. Joseph Cath. Orphan Soc'y v. Edwards*, 449 S.W.3d 727, 731 (Ky. 2014). Because counsel's absence was not the result of excusable neglect and was otherwise avoidable, and there being sufficient evidence presented on March 1 that domestic violence had occurred, again we find no error in the family court converting the EPO to a DVO based on the evidence presented at the March 1, 2022, hearing.

## CONCLUSION

For the foregoing reasons, we affirm the August 16, 2022, Domestic Violence Order entered by the Jefferson Family Court.

ALL CONCUR.

BRIEFS FOR APPELLANT:

M. Thomas Underwood
Louisville, Kentucky

BRIEF FOR APPELLEE:

Jonathan D. Miller
Louisville, Kentucky