RENDERED: AUGUST 25, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0205-ME

THOMAS AARON STOPINSKI        APPELLANT

        APPEAL FROM BULLITT CIRCUIT COURT
v.     HONORABLE MONICA K. MEREDITH, JUDGE
        ACTION NO. 22-D-00101-001

CHELSEY AMBER HOLTHOUSER       APPELLEE

<u>OPINION</u>
<u>AFFIRMING</u>

** ** ** ** **

BEFORE: CETRULO, ECKERLE, AND GOODWINE, JUDGES.

GOODWINE, JUDGE: Thomas Aaron Stopinski ("Stopinski") appeals from a

May 5, 2022 domestic violence order ("DVO") entered against him and in favor of

Chelsey Amber Holthouser ("Holthouser") by the Bullitt Circuit Court, Family

Division. After careful review of the record, we affirm.

Stopinski and Holthouser are divorced. The parties have two minor

children in common, B.S. and A.S., and Holthouser has a minor child, L.H. The

parties agreed to joint custody and an equal parenting schedule.

On April 12, 2022, Holthouser, on behalf of herself and the minor children, filed a petition/motion for an order of protection alleging in pertinent part:

> I have multiple text in our parenting app where he has threatened that I'm going under soon and he has a plan to do so. . . . He showed up at my daughter's gym after we had met for our children and parked his truck behind mine and told me he wasn't going to move unless I rolled down the window to talk to him. My 12 yr. old daughter got threatened over the weekend in text from his current girlfriend's child stating that she was going to "knock me and her head off." He bought my 6 yr. old son a cellphone and told him that he was tracking everywhere I was. . . . I do not feel safe with meeting him for our children, he has made it clear in text that he now knows my current address and that I will not "be there much longer" and he can promise me that. . . . He told my mother that he will not stop until "I go under."[1] At our last meeting, April 1st, he called me a stupid bitch in front of our children and threatened me that his current girlfriend was in his truck and would "beat my ass." . . . He owns guns in his home and I'm scared for my safety and my childrens.' He bought my 6 year old son a cell phone and told him there was GPS tracker on it, where he would know where I'm at, at all times. In our last text he said that he had something planned and he won't stop until I go under. He is involving our children in his conversations about our disagreements and causing them to have anxiety and nervousness. I am concerned for all of us.

---

[1] During the hearing, Holthouser testified regarding Stopinski's statements about her going under. Stopinski testified he was referencing that she would "go under" in the CPS investigation and that this was not a threat to her physical wellbeing. The family court excluded this testimony from its findings and did not rely on them in its order.

Record (R.) at 5-12.

Based on the petition, the family court entered an emergency protective order against Stopinski and summoned him to appear in court on April 26, 2022, but the hearing was continued until May 5, 2022. The parties appeared before the family court on May 5, 2022. Both parties were represented by counsel and testified at the hearing. No exhibits were entered into the record, and no other witnesses testified.

The family court summarized the parties' testimony in its written findings. The following is a summary of Holthouser's testimony:

> Petitioner stated that the parties have shared parenting time but at exchanges the Respondent is calling her names (stupid bitch, etc.) with the children present. Testified that Respondent has purchased a cell phone for their 6 year old son that includes a tracker mechanism so he knows where the child (and the Petitioner) are at all times. Petitioner referred to written petition of April 7, 2022 events and made reference to other incidents in the preceding days. Petitioner stated that on April 6 the respondent pushed her on her forehead with his finger while telling her he "didn't give a fuck" and threatened to have his girlfriend (who was in his vehicle) fight her. Petitioner stated that she was shaking and scared & respondent wanted her to roll down her window. Testimony was that the Respondent stated he would bust out her window if she didn't. After EPO was taken, but before Respondent was served, Petitioner testified she was sitting at [her daughter's] cheerleading gym and called the police to have him served. Petitioner testified that Respondent followed her to the back of the facility in his vehicle (with their younger children in the vehicle) and that he approached the back window demanding that

the parties' son . . . come with him.  Petitioner testified that the child had a fixed stare at her and would not move his head and that she was very scared.

R. at 30.

In its written findings, the family court summarized Stopinski's testimony as follows:

Respondent testified that he believes the entire action is a result of him filing a report with CPS of his concerns over the Petitioner allegedly drinking and driving with the children in the vehicle.  Respondent stated that there was a constant argument about the children's clothes not being returned to him despite multiple requests and that of the events testified to by the Petitioner was when he was trying to recover his son's Nintendo Switch and could not get the item back from the Petitioner.  On cross, the Respondent acknowledged that he had not actually observed the Petitioner intoxicated with the children while driving.  Respondent references DUI allegations in Indiana, but provided no exhibits.  Respondent admitted to calling Petitioner "a drunk" on at least 2 occasions and that he had called her a bitch but denied the children were present.  His testimony stated that the children were in his truck during the conversations.  Respondent made a number of assertions that the Petitioner "makes up" the schedule for parenting time and sets all the terms.  Respondent further states that Petitioner has missed a number of exchanges involving the children but was only able to identify one from February 2022 and stated that on the day the EPO was issued that the Petitioner had been to his home to pick up the children.

*Id.*

-4-

When the parties finished testifying, the family court stated based on the testimony, it found an act of domestic violence occurred. The family court did not orally identify any evidence or particular grounds upon which its finding was based and stated it would enter formal written findings and a three-year protective order.

On May 5, 2022, the family court entered a written DVO against Stopinski on form AOC-275.3, checking the box stating, "it was established by a preponderance of the evidence . . . that an act(s) of domestic violence and abuse . . . has occurred and may occur again." R. at 28. The family court also ordered Stopinski to comply with several additional terms. The court checked the box ordering Stopinski to surrender his license to carry concealed firearms and typed in the following: "Respondent shall immediately surrender all firearms, weapons & ammunition to the Bullitt County Sheriff's office and shall not purchase or possess firearms during the pendency of the Order." *Id.* The family court checked the box restraining Stopinski "from any contact or communication with [Holthouser] and the following other protected person(s)" and typed in "No 3rd party or direct communication; No Text; No emails; No social media messaging; No posts on social media about [Holthouser] and any applicable child/ren." *Id.* However, the family court allowed Stopinski to continue communicating via "coparent app; coparenting classes with a licensed therapist, lawful contact with children

allowed." *Id.* The court ordered Stopinski to remain "at least 500 feet away" from Holthouser and the minor children except for "lawful contact with children allowed" with a "CHFS approved 3rd party supervisor for exchange." *Id.* The family court ordered Stopinski to participate in the "Batterer Intervention Program through any certified state approved provider." R. at 29. To prevent further acts of domestic violence and abuse the family court ordered "[Holthouser] shall complete the Choices Program through the Center for Women and Families. Co-parenting classes by licensed therapist. Children shall have no cell phones (tracker devices)." *Id.*

In addition to completing the AOC form, the family court typed written findings onto the docket sheet:

> The Court finds that the Petitioner has met the burden necessary in establishing that an act of domestic violence occurred. The Petitioner has testified to multiple instances where she felt "trapped" in parking lots, at cheer practice, etc. when the Respondent blocked her vehicle with his, exited his truck, and approached her vehicle once by the driver's window, and another by the rear compartment of the vehicle when he followed her behind Bullitt Athletics bldg. The Court is not persuaded by the Respondent's testimony that the parking lot was full when he parked behind her vehicle or the argument that the Petitioner could have gotten out by driving over a grassy area especially when 1) she was the first to arrive and 2) there is no contest that respondent left his truck and approached her vehicle on a day not previously scheduled for an exchange of the children.

*Id.* This appeal followed.

On appeal, Stopinski argues: (1) the DVO was not supported by substantial evidence and (2) the family court's findings were clearly erroneous.

To enter a DVO, the trial court must conduct a hearing and find "by a preponderance of the evidence" that domestic violence and abuse has occurred and may occur again. KRS[2] 403.740(1). "The preponderance of the evidence standard is satisfied when sufficient evidence establishes the alleged victim was more likely than not to have been a victim of domestic violence." *Caudill v. Caudill*, 318 S.W.3d 112, 114 (Ky. App. 2010) (citation omitted). Our standard of review for factual determinations is whether the trial court's findings were clearly erroneous. *Id.* Findings of fact are not clearly erroneous if they are supported by substantial evidence. *Id.* at 114-15 (citing *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003)).

Stopinski argues the DVO was not supported by substantial evidence, and the family court's findings were clearly erroneous. He argues his actions merely amounted to unwanted touching, and that there was no testimony of any instances of physical abuse or threats. He further argues Holthouser's subjective fear of him, without an implicit or explicit threat of violence, is insufficient to support a DVO.

"Domestic violence and abuse" is defined as "[p]hysical injury, serious physical injury, stalking, sexual abuse, strangulation, assault, or the

---

[2] Kentucky Revised Statutes.

infliction of fear of imminent physical injury, serious physical injury, sexual abuse, strangulation, or assault between family members or members of an unmarried couple[.]" KRS 403.720(1). "Imminent" means "impending danger, and, in the context of domestic violence and abuse as defined by KRS 403.720, belief that danger is imminent can be inferred from a past pattern of repeated serious abuse." KRS 503.010(3). Under KRS 403.740(1), "[f]ollowing a hearing ordered under KRS 403.730, if a court finds by a preponderance of the evidence that domestic violence and abuse has occurred and may again occur, the court may issue a domestic violence order[.]"

As Holthouser points out, this case is factually similar to *Hohman v. Dery*, 371 S.W.3d 780 (Ky. App. 2012). As in *Hohman*, "[o]ur inquiry turns on whether substantial evidence supports a finding that [Stopinski] inflicted upon [Holthouser] a fear of imminent physical injury or assault." *Id.* at 782. Stopinski relies on his own testimony to support his argument that he did not cause Holthouser to fear imminent physical injury. Despite Stopinski's testimony to the contrary, Holthouser testified that Stopinski pushed her on her forehead. She also testified Stopinski threatened that he would have his girlfriend, who was present during the altercation, physically attack Holthouser. Holthouser also testified Stopinski followed her and blocked in her vehicle with his truck, so she could not leave the parking lot of her daughter's cheerleading gym. While blocked in,

Holthouser testified Stopinski approached her vehicle and threatened to bust out her window while she was in her vehicle with the children. She also testified Stopinski addressed her with foul language in the presence of the children.

As in *Hohman*, Stopinski denies some of Holthouser's allegations. However, "[t]he trial court is in the best position to judge the credibility of the witnesses and weigh the evidence presented." *Holt v. Holt*, 458 S.W.3d 806, 813 (Ky. App. 2015) (citing *Rupp v. Rupp*, 357 S.W.3d 207, 210 (Ky. App. 2011)). Here, both Holthouser and Stopinski testified regarding Stopinski's conduct. They provided some overlapping testimony and some conflicting accounts of Stopinski's actions. As the factfinder, the family court found Holthouser's testimony to be more credible. Stopinksi asks this Court to re-weigh the evidence and reverse the DVO because he believes his own testimony is more credible than Holthouser's. We will not invade the province of the family court as a factfinder. Based on the record, we conclude the evidence presented was sufficient for the family court to find that Stopinski's conduct caused Holthouser to fear imminent physical injury. Thus, we conclude the DVO was supported by substantial evidence, and therefore, the family court's findings were not clearly erroneous.

For the foregoing reasons, we affirm the domestic violence order of the Bullitt Circuit Court, Family Division.

ALL CONCUR.

BRIEFS FOR APPELLANT:                    BRIEF FOR APPELLEE:

Kyle Louis Schickel                      Tammy R. Baker
Louisville, Kentucky                     Shepherdsville, Kentucky