RENDERED: APRIL 4, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1216-ME

B.H.                                                                                          APPELLANT

v.                    APPEAL FROM CHRISTIAN FAMILY COURT
                     HONORABLE JASON FLEMING, JUDGE
                     ACTION NO. 24-D-00323-001

M.C.                                                                                          APPELLEE

OPINION
VACATING AND REMANDING

** ** ** ** **

BEFORE: EASTON, ECKERLE, AND KAREM, JUDGES.

EASTON, JUDGE: Appellant, B.H. ("Father"), appeals from the Christian Family

Court's domestic violence order ("DVO") issued on September 17, 2024. For the

reasons which follow, we vacate and remand for a new hearing.

**FACTUAL AND PROCEDURAL BACKGROUND**

Appellee, M.C. ("Mother"), and Father are the biological parents of a three-year old boy ("Child"). According to Mother, Child has cognitive and behavioral disabilities and will be starting soon with special education. On August 22, 2024, Mother and some of her extended family were at the residence owned by Father. Among those present were two of Mother's nephews, who Mother says are autistic. While Mother and others were involved with watching the other children, Father was working outside near a shed. Child was with Father.

Father noticed that, despite his warnings, Child had touched a pokeweed plant and had the purple juice of the berries on his hands. Concerned about the poison nature of pokeweed[1] berries, Father took Child to the kitchen sink inside the house. Father placed a rectangular plastic laundry basket turned upside down for Child to stand on while he washed the juice off Child's hands. Father recalled that the juice came off easily, and he did not use any excessive force toward Child.

Mother entered the picture. Father described Mother's behavior as a "fugue state" when she interrupted this washing. Mother remembered it quite

---

[1] American Pokeweed is prevalent in Kentucky. The plant is generally poisonous, especially the berries, although various parts may be eaten if properly prepared. David Taylor, *American Pokeweed*, UNITED STATES DEPARTMENT OF AGRICULTURE, U.S. FOREST SERVICE, https://www.fs.usda.gov/wildflowers/plant-of-the-week/phytolacca_americana.shtml (last visited March 21, 2025).

differently.  A full week later, on August 29, 2024, Mother filed a Petition alleging domestic violence on behalf of Child.  We provide the entire narrative as stated in the Petition:

> I came into the kitchen to see why [Child] was upset because he was being watched by [Father].  When I walked in [Father] screamed at me to get the f[***] out of his face.  He had [Child] pinned up against the sink scrubbing him violently.  He dropped [Child] and he slipped on the water on the floor.  He grabbed him by his shirt and I scooped [Child] up into my arms.  I turned my back to [Father] to put myself inbetween [sic] him and [Child] and he came up right behind me telling me to stay out of it b/c [sic] it was between him and [Child].

The family court issued an emergency protective order ("EPO") and appointed a guardian *ad litem* ("GAL")[2] ("Cotthoff") to represent Child.  Both parties, *pro se*, and Cotthoff appeared for a hearing on September 10, 2024.  Mother confirmed her statement in the Petition as true and accurate.  In her testimony, Mother added information to some extent consistent with what Father remembered.  She thought Father was mad about Child touching poison berries.  Mother also testified that Father is "quick to anger" and "has trouble when it comes to children not listening to him."  Mother does not trust Father to watch Child in part because Father would "nitpick" if Child left messes around the house.

---

[2] While a parent may file a petition for a DVO on behalf of a child, the child must be represented by a GAL in the proceedings.  *Smith v. Doe*, 627 S.W.3d 903, 915 (Ky. 2021).

-3-

Father asked to introduce a court document into evidence to demonstrate a prior occasion when Mother was psychotic. This document was an Order[3] from a dependency, neglect, and abuse ("DNA") case in another county in 2022. At this point, the family court noticed that Cotthoff, the GAL appointed for Child in the present case, had previously represented Father in the prior DNA case.

Cotthoff had already participated in the hearing by eliciting testimony from Mother. The family court immediately relieved Cotthoff as GAL and appointed a new GAL ("Hooks") for Child. The family court continued the matter for one week, stating that it would be unnecessary to re-hear the testimony already heard as it would be "fresh" on the court's mind. The Calendar Order from that date also restricts further evidence: "The Court does not intend on repeating evidence next time except to the extent needed by Ms. Hooks."

On September 17, 2024, both parties, again *pro se*, appeared in person, and Hooks appeared virtually. Before describing his version of events, Father stated his belief that Mother's mental health problems impacted her perception of the events. Because of his prior experience with Mother's mental illness, he allowed Child to be removed by Mother from the hand-washing incident only to keep things calm.

---

[3] This Court takes judicial notice of this Order, which was entered after a temporary removal hearing in the parties' Trigg District Court DNA action, Case No. 22-J-00065-001. *See Polley v. Allen*, 132 S.W.3d 223 (Ky. App. 2004).

-4-

Hooks had only one question, asking Mother about her history of mental illness. Mother testified that she had been diagnosed with "slight" bipolar disorder, anxiety, depression, and night terrors. But she managed her mental health through medication and therapy. Mother further explained that the 2022 DNA case related to a post-partum episode when she had not been medicated. The testimony about this event suggests this same Child had to be physically removed from Mother's grasp, which led to the DNA action. Mother was taken to one of the state mental hospitals for treatment. While not denying a psychotic reaction resulting in the prior DNA case, Mother insisted that she had not had any mental health problems for the two years since because she has remained on her medication.

The family court asked if either party had anything further for the record, to which Father replied with his belief that the Petition contained several errors which serve as proof of Mother's illness and delusional[4] mindset at the time of the events, but Father did not elaborate on this. Significantly, Father responded to the family court that he had no other evidence about the events of the day in question.

The family court announced that it found domestic violence had occurred and may occur again and entered a DVO on behalf of Child that was to

---

[4] In his brief, Father refers to pets identified by Mother in her Petition which he says do not exist.

remain in effect for one year. The family court awarded Mother temporary custody of Child, with Father to have visitation as agreed but no less than that set by the Kentucky Department for Community Based Services ("DCBS"). The family court entered its order using Form 275.3, which is a standardized order from the Administrative Office of the Courts ("AOC").

In the DVO's additional findings section, the family court checked one box, finding "[f]or Petitioner against Respondent in that it was established, by a preponderance of the evidence, that an act(s) of domestic violence and abuse has occurred and may again occur[.]" As for supplemental findings, the family court added "that the facts in the Petition were proven by a preponderance of the evidence. The Court incorporates the facts in the Petition as if set forth herein in their entirety." Neither party filed a motion for additional factual findings. This appeal followed.

## STANDARD OF REVIEW

We review the entry of a DVO under an abuse-of-discretion standard as to a trial court's finding of domestic violence. *Johnston v. Johnston*, 639 S.W.3d 428, 431 (Ky. App. 2021) (citations omitted). Our review of the trial court's factual findings is limited to ascertaining whether they were clearly erroneous. Kentucky Rules of Civil Procedure ("CR") 52.01; *Hall v. Smith*, 599 S.W.3d 451, 454 (Ky. App. 2020). "But with regard to the trial court's application

-6-

of law to those facts, this Court will engage in a *de novo* review." *Buddenberg v. Buddenberg*, 304 S.W.3d 717, 720 (Ky. App. 2010) (citation omitted).

Findings of fact are not clearly erroneous if they are supported by substantial evidence, which is evidence of sufficient probative value to induce conviction in the minds of reasonable people. *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003). A reviewing Court must give due regard to the trial court's judgment as to the credibility of the witnesses. *Id.*

## ANALYSIS

Our review may also be impacted by how the parties have preserved and presented the issues to this Court. A *pro se* status does not completely exempt either party from the mandate to follow procedural rules. Briefs filed by appellate advocates acting *pro se* are expected and required to demonstrate a good faith effort to comport with the appellate rules. *Hallis v. Hallis*, 328 S.W.3d 694, 698 (Ky. App. 2010).

Father's brief demonstrates an overall good faith effort to follow the appellate rules despite providing no citations to case law or other authority to support his argument. While Father's *pro se* brief is not fully compliant with applicable rules, we are still able to determine how he preserved his arguments and what his arguments are. The entire recorded proceedings for both days of hearings

-7-

in this case are just over thirty minutes in total length. It is not difficult to ascertain if Father's concerns have merit.

On the other hand, Mother failed to file a brief. When an appellee fails to file a brief within the allotted time, this Court may: "(1) accept the appellant's statement of the facts and issues as correct; (2) reverse the judgment if appellant's brief reasonably appears to sustain such action; or (3) regard the appellee's failure as a confession of error and reverse the judgment without considering the merits of the case. [Kentucky Rules of Appellate Procedure ("RAP") 31(H)(3)]." *Petrie v. Brackett*, 590 S.W.3d 830, 835 (Ky. App. 2019). The decision whether to impose any penalties is within this Court's discretion. *Roberts v. Bucci*, 218 S.W.3d 395, 396 (Ky. App. 2007).

We realize that many DVO cases will involve *pro se* parties. We should hesitate to make decisions without consideration of the merits in these situations, because of the serious consequences of an ill-advised issuance of a DVO and the corresponding danger when a DVO is not entered when it should have been. Often, the record to be reviewed will not be lengthy, in part because the family courts simply do not have the time on their busy dockets to accommodate overly long hearings. And, as an appellate court, we are not too burdened with fully reviewing these limited records. Yet, we must have

procedural rules and consequences for not following them, even with *pro se* litigants.

The family court completed the AOC Form 275.3 by first checking the box which includes the two essential factual findings to justify a DVO – domestic violence or abuse occurred and may occur again. Checking this box is all that is required. *Smith v. McCoy*, 635 S.W.3d 811, 817 (Ky. 2021). As additional findings, the family court incorporated by reference the allegations in the Petition as facts found. Family courts may and often do incorporate verbal findings or adopt written allegations if proven into their written orders.

The family court did not engage in further fact-finding, orally or in writing. For example, the family court's rulings omit entirely Father's concerns about Mother's documented and admitted, long-standing mental health problems and the impact of her illness upon her allegations upon which Father did not fully elaborate during the hearings.

"'Domestic violence and abuse' means . . . [p]hysical injury, serious physical injury, stalking, sexual abuse, strangulation, assault, or the infliction of fear of imminent physical injury, serious physical injury, sexual abuse, strangulation, or assault between family members or members of an unmarried couple[.]" KRS[5] 403.720(2)(a). If Mother is believed by the family court, what

---

[5] Kentucky Revised Statutes.

she said may suffice. Father "pinned" child to sink, scrubbed his hands "violently," dropped the child, and tried to lift him by his shirt. Even without physical injury, the infliction of fear of imminent physical injury is enough.

The weakest part of the evidence so far is the basis for the finding that abuse may occur again. Someone who is quick to anger, nitpicks, and generally has trouble with children who do not obey him is not necessarily likely to engage in further actions like that alleged in this case. There is no evidence of any prior events, although that is not required. Known attitudes toward Child with a proven incident of concerning physical contact may be enough to satisfy this second element of a risk of future events.

Due process in a domestic violence hearing requires that each party have a meaningful opportunity to be heard. *Wright v. Wright*, 181 S.W.3d 49, 53 (Ky. App. 2005). "[A] party has a meaningful opportunity to be heard where the trial court allows each party to present evidence and give sworn testimony before making a decision." *Holt v. Holt*, 458 S.W.3d 806, 813 (Ky. App. 2015). Certainly, "[d]ue process is not satisfied when a DVO is granted without a full hearing, such as when testimony is not presented, or testimony is cut short." *Hawkins v. Jones*, 555 S.W.3d 459, 462 (Ky. App. 2018).

With the circumstances presented, we choose to vacate the DVO because the contents of Father's brief reasonably sustain that action. We do so

partly because that is what Father asked for. He did not demand reversal. Essentially, Father simply requests to be fully heard, and the issue created by the participation of a disqualified GAL in the first hearing as well as the potential misunderstanding by Father of what he could present at the continuation of the hearing as opposed to a new hearing with a new GAL makes this an appropriate resolution. We do not by this decision establish any precedent that participation by a disqualified GAL alone justifies reversal. As with many issues, that will depend on the circumstances of each case.

We have no criticism of the experienced family court judge or the GALs in how this matter was handled. It presents an unintended consequence of a potentially misunderstood limitation on further evidence combined with participation of a conflicted GAL who had no real reason to immediately recognize the issue created by his participation in the presentation of evidence at the first court appearance. Because Mother failed to file a brief and Father merely asks for a further hearing rather than reversal, we have chosen this result, rather than affirm or reverse on the merits.

For these same reasons, we cannot agree with the dissent which would take a further step and declare as a matter of law that the evidence presented, despite the GAL issue and the limitation on further evidence, does not sustain the findings necessary for the issuance of a DVO. This case, in its present posture,

-11-

may sit on the border of those which call for a DVO to be entered, but we believe the family court should have the opportunity first to readdress this case on remand by way of a new hearing without the disqualified GAL complication and the limitations on further evidence communicated by the family court to these *pro se* parties. There may or may not be substantial additional evidence on remand which may or may not sustain the family court's factual findings either way.

## CONCLUSION

Based on the foregoing, the DVO issued by the Christian Family Court on September 17, 2024, is vacated, and this matter is remanded to the family court for a new hearing on the Petition. When this appellate matter becomes final, the family court will have the standard statutory timeframe within which to schedule and conduct a hearing to determine whether the issued EPO should result in an DVO.


KAREM, JUDGE, CONCURS.

ECKERLE, JUDGE, DISSENTS AND FILES SEPARATE OPINION.

ECKERLE, JUDGE, DISSENTING: Respectfully, I dissent. While the majority and I agree that the ultimate decision of the Family Court cannot stand, we disagree as to whether we should send the case back to the Family Court for

-12-

another attempt by vacating and remanding it (the majority Opinion) or resolve the case entirely at the appellate level by reversing it (my dissent). We also all agree that the Family Courts are burdened with heavy dockets, thorny issues, and parties litigating *pro se* that do not always submit compliant briefs (if they brief the issues at all). While none of us can accept the Family Court's decisions here, our opinions should not be construed as a unanimous criticism of the Family Court.

In my opinion, the evidence presented by Mother in this case simply does not legally sustain the Family Court's summary holding that domestic violence occurred and that there is a likelihood of future domestic violence. Thus, I believe that the decision must be reversed because the succinct ruling lacks factual and legal foundation from the evidence presented. I cannot concur that we need to send the case back for any more proceedings. The Family Court already had two days of hearings and gave the parties opportunities to present evidence and arguments. That evidence alone was insufficient to support the Family Court's rulings, and that is all the evidence of record that we need and should consider.

If we send the case back on remand for more detailed factual findings upon the evidence already presented, the legal conclusion would – and should – remain the same. Thus, no purpose would be served.

If, however, we allow more evidence to be presented, as the majority suggests, we give one party a second bite at the proverbial apple armed with the

aid of an appellate opinion steering her towards curing what this panel agrees are legal deficiencies. Doing so offers counsel only to Mother, who did not provide the proof necessary to sustain the DVO at the hearing below in the first place and who did not even file an appellate brief here in the second. While we rightfully allow more leeway to parties who act *pro se*, we should rule on the merits as we find them.

I agree with the majority that the Family Court's factual findings were not ideal in this case as it merely checked a box on a form and adopted Mother's allegations about domestic violence without explanation. I also agree with the majority that allowing the participation of a GAL for Child who had previously represented Father as a GAL in a prior DNA action compromised the proceedings. However, I believe that the overarching problem here is the lack of an adequate evidentiary, factual basis to enter the DVO. And had the Family Court issued more detailed findings and ensured that the GAL had no conflict – as it should have done – it still should not have issued the DVO. And if it complies with the majority's instructions upon remand and issues more detailed findings without a conflicted GAL, it should again not issue the DVO.

The Family Court's bare legal conclusion without any analysis that the "facts in the Petition were proven by a preponderance of the evidence[]" is insufficient. No rationale whatsoever was given as to the manner in which the

-14-

facts in the Petition proved domestic violence occurred – let alone any showing that domestic violence may occur in the future. Both are prerequisites to issuing a DVO. This Petition only avers specific facts about one incident in which Father was understandably upset that Child had encountered poisonous berries, and he then scrubbed the potentially toxic residue from Child's hand. We do not know how this incident would implicate future violence because the Family Court provided no explanation for that finding. Furthermore, the Family Court's rulings omit entirely Father's concerns about Mother's documented and admitted, long-standing mental health problems and the impact of her illness upon her allegation.

Under these circumstances, I believe that sending the case back to the Family Court to make the factual findings that are (and were) required prior to the issuance of a DVO would be inappropriate for several reasons. First, although lacking detailed predicate, the Family Court did the minimal work of checking a box on the AOC Form and adopting by reference the facts in the Petition involving the single incident of aggressive washing after the contact with the poison. Second, those facts are undisputed by the parties, although they are interpreted somewhat differently. Thus, sending the case back for more factual findings – which should have been made in the first place – would not accomplish a different stance on appeal and would not change our ruling as to the law. And it would not serve judicial economy. Third, and most importantly, the Family Court's error

here, in issuing the DVO even on these bare-bones, undisputed facts, is far more significant than failing to provide factual detail. And I would prefer to rule on that most important ground. Finally, Mother did not respond to this appeal at all, and we should refrain from requesting more findings for her when she has failed to act entirely. Perhaps she has abandoned her quest for relief. We do not know because she did not respond to Father's brief at all.

When an appellee fails to file a brief within the allotted time, this Court may: "(1) accept the appellant's statement of the facts and issues as correct; (2) reverse the judgment if appellant's brief reasonably appears to sustain such action; or (3) regard the appellee's failure as a confession of error and reverse the judgment without considering the merits of the case. [RAP 31(H)(3)]." *Petrie v. Brackett*, 590 S.W.3d 830, 835 (Ky. App. 2019). The decision whether to impose any penalties is within this Court's discretion. *Roberts v. Bucci*, 218 S.W.3d 395, 396 (Ky. App. 2007).

Because Father's brief shows that the entering of the DVO upon the facts presented by Mother was improper under the second factor above, he has shown that we should reverse the judgment. Thus, we are not required to get into the merits in this case at all.

But even delving into the merits as we do, reversing the DVO is nonetheless the appropriate outcome here. While "domestic violence statutes

-16-

should be construed liberally in favor of protecting victims from domestic violence and preventing future acts of domestic violence[,]" *Barnett v. Wiley*, 103 S.W.3d 17, 19 (Ky. 2003), "the construction cannot be unreasonable." *Id.* A DVO has significant long-term consequences for both parties, and "[t]he impact of having an EPO or DVO entered improperly, hastily, or without a valid basis can have a devastating effect on the alleged perpetrator." *Williford v. Williford*, 583 S.W.3d 424, 428 (Ky. App. 2019); *see also Wright v. Wright*, 181 S.W.3d 49, 52 (Ky. App. 2005).

This Court has held that a Family Court did not have a sufficient basis to support issuing a DVO where its ruling stated that it was granting the DVO "based on one occasion when [respondent] 'basically pushed [petitioner] out of the way to enter the home.'" *Caudill v. Caudill*, 318 S.W.3d 112, 115 (Ky. App. 2010). Therein, this Court held that the unwanted touching, by itself, did not establish domestic violence and abuse as stated in KRS 403.740(1) (formerly KRS 403.720(1)). *Id. See also Telek v. Daugherty*, 376 S.W.3d 623, 628 (Ky. App. 2012) (DVO reversed where Respondent grabbed Petitioner's arm and shoved her away with his body was akin to unwanted touching, which alone is insufficient to meet the definition of domestic violence). Here, there was a similar, single incident of aggressive hand washing that is at issue.

While Mother added general allegations of Father's poor anger management when dealing with Children, we have previously held that these claims alone are legally insufficient to conclude that a party inflicted a fear of imminent physical injury. For example, this Court previously only affirmed a DVO where we concluded that petitioner's testimony detailed incidents beyond just that the respondent lacked "the ability to control his emotions," including that she felt threatened by the respondent's clenching of his fists, gritting his teeth, and yelling at her; she witnessed the respondent following her and engaging in frequent "drive-bys [sic]" of her home; and she received numerous text messages wherein the respondent degraded her and used derogatory and explicit language. *Hohman v. Dery*, 371 S.W.3d 780, 781-82 (Ky. App. 2012). There, we found that multiple and substantial evidence supported the Trial Court's finding that a respondent inflicted a fear of imminent physical injury. *Id.* And the petitioner testified that the respondent was aggressive, behaved erratically, was unable to control his emotions, and that she feared his conduct would escalate. *Id.* at 783. We have no such testimony here.

The DVO at issue in this case summarily determined that domestic violence and abuse was established based only on Mother's allegations claimed in her Petition and testimony that alleged one occasion of Father's aggressive washing of Child's hands after he had undisputedly touched poison berries and still

had the residue on his hands.  Despite some conflicting testimony as to the force that Father may have used to wash Child's hands, both Mother's and Father's testimony reflected the same base narrative that Father was washing Child's hands after he had handled a toxic substance, which he had been instructed not to touch. It is not unreasonable that a young child would react tearfully and loudly, regardless of force, as a parent washed his hands upon discovering that the child disobeyed a command and was subsequently exposed to something potentially harmful.  While we do not evaluate the credibility of witnesses, we must point out that the proof offered here – even if accepted as completely true – is very thin and not necessarily indicative of a problem on its own.

Moreover, Mother's Petition and testimony did not indicate any fear of imminent physical injury at all.  Her averments are also completely devoid of any compounding or prior incidents or behaviors to support such a claim or apprehension.  Even when probed by the GAL at the September 10, 2024, hearing, Mother could not provide examples to demonstrate that Father's purported anger created a behavioral pattern escalating to that which could potentially be classified as domestic violence.  Statements that Father is "quick to anger" and will "nitpick" about messes, even in light of the August 22, 2024, incident, do not support a finding of fear of imminent physical injury.  And Mother did not file a brief on appeal.  We cannot supply arguments for her, and we should not provide her with

our reasoning and send the case back to give her a second chance at providing evidence that she could and should have presented in the first place (if she had any).

Furthermore, the testimony and evidence do not support the Family Court's finding that the second element required to issue a DVO, that an act of domestic violence "may again occur," was satisfied. In determining whether domestic violence may recur, our Supreme Court has stated that "[t]he predictive nature of the standard requires the family court to consider the totality of the circumstances and weigh the risk of future violence against issuing a protective order." *Pettingill v. Pettingill*, 480 S.W.3d 920, 925 (Ky. 2015). As previously discussed, the Petition and testimony detailed a singular event; neither party introduced testimony or evidence to demonstrate a history of domestic violence; and there was no claim whatsoever that Child is fearful of Father in general or imminent physical injury in particular. Considering the totality of the circumstances, I would hold that substantial evidence was not provided to support the Family Court's conclusion that an act of domestic violence may occur in the future. Thus, the findings were clearly erroneous on that element. And Mother has filed no appellate brief to the contrary. Consequently, under these circumstances, we should reverse the entry of the DVO and decline to send the case back to the Family Court for more evidence or findings.

BRIEF FOR APPELLANT:        NO BRIEF FOR APPELLEE.

Barry Hancock, *pro se*
Cadiz, Kentucky